UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.   CV-15-1862-MWF-MRWx**          **Date:  January 7, 2016**

Title:     Felipe Garcia, et al. -*v*- Hetong Guo, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| | |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
| | |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER GRANTING WITH LEAVE TO AMEND DEFENDANT'S MOTION TO DISMISS [27]

Before the Court is Defendant Lentuo International Inc.'s Motion to Dismiss Amended Class Action Complaint (the "Motion"), filed on September 21, 2015. (Docket No. 27).  Plaintiff Felipe Garcia submitted an Opposition to the Motion on November 5, 2015.  (Docket No. 31).  Lentuo's Reply to the Opposition followed on November 27, 2015.  (Docket No. 36).  The Court has read and considered the parties' submissions, and held a hearing on **December 14, 2015**.

The Motion is **GRANTED** *with leave to amend*.  As to Lentuo's statements about its cash reserves, Plaintiff has failed to allege particularized facts regarding the falsity of these statements.  Plaintiff has, however, alleged sufficient facts in support of his claims regarding the omission of the loans in Lentuo's financial statements.  In so concluding, the Court had to rely on allegations and documents submitted in Plaintiff's Opposition rather than the contents within the four corners of the First Amended Complaint.  Therefore, the Motion is also granted as to the alleged omissions with leave to amend.

## I.    BACKGROUND

Plaintiff filed this security class action on behalf of "all those who purchased or otherwise acquired Lentuo [American Depository Shares ("ADS")] during the Class Period" of May 15, 2014, to March 9, 2015.  (First Amended Complaint ("FAC"), Docket No. 25, ¶¶ 1, 90).  The FAC alleges violations of Sections 10(b) of the Securities Exchange Act of 1934, as well as Rule 10b-5, promulgated thereunder.  (*Id.*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-15-1862-MWF-MRWx**          **Date:  January 7, 2016**

Title:      Felipe Garcia, et al. -*v*- Hetong Guo, et al.

¶¶ 98–109).  The FAC further alleges violations of Section 20(a) of the Securities Exchange Act against Defendants Guo, Jing Yang, and Jiangyu Luo.  (*Id.* ¶¶ 110–115).  These violations purportedly arise from Lentuo's alleged omission of related-party transactions in its financial statements as well as Lentuo's alleged misrepresentation about its cash reserves.  (*Id.* ¶¶ 4–15).  According to Plaintiff, these misleading omissions and statements artificially inflated the value of Lentuo securities, which declined sharply once the related-party transactions as well as Lentuo's severe cash shortage became public.  (*Id.*).

The following background is based on the allegations of the FAC:

Lentuo operates automobile franchise dealerships in the People's Republic of China.  (*Id.* ¶ 2).  Lentuo provides a "one-stop shop" experience for its customers by offering them a wide range of automobile products and services in each of its franchise dealership, or 4S dealerships (*i.e.*, sales, spare parts, services and survey) as they are commonly known in China.  (*Id.*).  Lentuo, a Cayman Islands corporation, is a holding company that does not conduct any substantive operations on its own but instead conducts its business operations through its variable interest entities ("VIEs") located in China.  (*Id.* ¶ 28).  Chinese companies employ the VIE structure because Chinese law imposes certain limitations on direct equity ownership of Chinese companies operating in certain strategic industries by wholly foreign-owned enterprises.  (*Id.* ¶ 36).  Defendant Hetong Guo is the founder, chairman, and majority owner (holding 46% of outstanding shares) of Lentuo.  (*Id.* ¶ 44).  Lentuo is headquartered in Beijing, China and its ADS traded on the New York Stock Exchange ("NYSE") under the ticker symbol "LAS" until it was delisted in 2015.  (*Id.* ¶ 21).

Lentuo Electromechanical ("LE") is a Chinese company also controlled by Guo.  (*Id.* ¶ 33).  In fact, Guo owns 75% of LE.  (*Id.*).  Lentuo, through two of its wholly owned subsidiaries, entered into a series of contractual agreements with LE and LE's wholly-owned subsidiaries that operate 4S auto dealerships ("VIE Arrangements").  (*Id.* ¶ 31).  Pursuant to the VIE Arrangements, Lentuo, through its wholly owned subsidiaries, obtained effective control over nine of LE's wholly-owned subsidiaries, including the right to substantially all of the economic benefits and the obligation to fund all of the expected losses of the these subsidiaries.  (*Id.*).  LE's subsidiaries,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV-15-1862-MWF-MRWx**            Date:  **January 7, 2016**
Title:       Felipe Garcia, et al. -*v*- Hetong Guo, et al.

therefore, become Lentuo's VIEs.  (*Id.*).  The VIE Arrangements included the "Exclusive Technology Consulting and Service Agreements" ("Service Agreement"), under which a Lentuo wholly-owned subsidiary would provide certain consulting services and resources to the VIEs in exchange for services fees on a quarterly basis of up to 100% of the respective VIE's quarterly profits.  (*Id.* ¶ 32).  In sum, Lentuo does not have direct equity ownership over its VIEs.  (*Id.* ¶ 38).  Rather, it entered into a series of contractual arrangements that enabled it to exercise effective control over its VIEs, and receive economic benefits from as well as assume the economic losses of the VIEs.  (*Id.*).

On May 28, 2014, SeekingAlpha.com published a report by research company GeoInvesting LLC ("May 28th GeoInvesting Report"), revealing that Lentuo had secretly issued RMB 250 million of debt via two investment trusts to investors in China (collectively, the "Loans").  (*Id.* ¶ 62).  The Loans, comprised of a RMB 150 million loan and a RMB 100 million loan, were both fully subscribed by December 2013, five months before Lentuo filed its 2013 Form 20-F ("2013 20-F") with the SEC.  (*Id.* ¶¶ 49, 62).  While the debt was ostensibly issued by LE, the real primary beneficiary and obligor was in fact Lentuo, with Guo and his wife jointly and severally guaranteeing the debt.  (*Id.* ¶ 62).

A due diligence summary for the RMB 150 million loan revealed that revenue generated from LE's 4S stores was designated as the sole source of payback.  (*Id.* ¶ 62).  The 4S stores listed were the same nine VIEs controlled by Lentuo through the VIE Arrangement.  (*Id.* ¶ 31).  The due diligence report indicated that the funds would be used for the construction of an Audi 4S store in Beijing for LE.  (*Id.* ¶ 62).  This coincided with Lentuo's disclosure on its 2013 20-F that it was building an Audi dealership in Beijing.  (*Id.* ¶ 70).  A due diligence summary for the RMB 100 million loan similarly revealed that Guo had personally guaranteed the debt again via joint and several liability with his wife.  (*Id.* ¶ 62).  Furthermore, under a section entitled "Risk Control," the loan document noted that Guo owned 14,965,646 shares in Lentuo as of January 22, 2013, and that on December 10, 2010, "Lentuo International of Lentuo Group" went public on the NYSE, thus reassuring trust investors of the reliability of the "first source of money payback."  (*Id.*).

CIVIL MINUTES—GENERAL                                                        3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-1862-MWF-MRWx          Date:  January 7, 2016
Title:      Felipe Garcia, et al. -*v*- Hetong Guo, et al.

Lentuo issued a response to the May 28th GeoInvesting Report the next morning ("May 29th Press Release"), admitting to the existence of the RMB 150 million loan, but denying that it imposed any obligations or liabilities on Lentuo. (*Id.*). Lentuo's response did not expressly address the RMB 100 million loan. (*Id.*).

In response to the May 29th Press Release, Seeking Alpha published a rebuttal from GeoInvesting on June 5, 2014 ("June 5th GeoInvesting Reply"). (*Id.* ¶ 64). The June 5th GeoInvesting Reply further clarified Lentuo and Guo's obligations under the two trust loans, and debunked Lentuo's claim that Lentuo's 4S shops would not incur any obligations, while also refuting Lentuo's contention that Guo did not pledge any of his equity interest in Lentuo as part of his guarantee for the trust loans. (*Id.*). Following the June 5th GeoInvesting Reply, Lentuo's ADS fell $0.34 per share, or over 9% from its previous closing price, to close at $3.15 per share. (*Id.* ¶ 79).

On March 10, 2015, an article appeared in the *Beijing Business Today* ("BBT Article"), reporting that Lentuo's VIEs in Beijing had effectively shut down due to financial difficulties. (*Id.* ¶ 73). Specifically, the BBT Article reported that Lentuo's 4S shops were in "a state of semi-closure," as keys to the show cars in several of Lentuo's 4S shops had been confiscated by banks due to Lentuo's cash problems. (*Id.* ¶ 74). The BBT Article further reported that "due to cash flow problems, the 4S shops of Lentuo stopped selling new cars, and only post-sale services are provided." (*Id.* ¶ 75). According to the BBT Article, Lentuo's cash problems were not new; in fact, an employee at Lentuo's Mazda 4S shop told BBT that Lentuo had been having problems "starting the end of last year." (*Id.*). Furthermore, the industry as a whole had been "facing [an] unprecedented death trail" over the past two years, and that like Lentuo, more and more 4S dealers were facing cash problems. (*Id.* ¶ 77). As a result of the adverse information in the BBT Article, Lentuo's ADS fell $0.30 per share, or more than 50% over the next two days, to close at $0.29 per share on March 11, 2015. (*Id.* ¶ 80).

Between May 15, 2014, and December 1, 2014, Plaintiff alleges that Lentuo's 2013 20-F as well as a series of press releases omitted material information regarding the Loans. (FAC ¶¶ 49–58). Specifically, Plaintiff claims that the accompanying balance sheet in these documents only listed one long-term loan that Lentuo obtained

CIVIL MINUTES—GENERAL                                    4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-1862-MWF-MRWx          Date:  January 7, 2016
Title:      Felipe Garcia, et al. -*v*- Hetong Guo, et al.

from Shanghai Pudong Development Bank.  (*Id.*).  According to Plaintiff, these balance sheets were misleading for failing to disclose the Loans.  (*Id.*).  Similarly, Plaintiff also alleges these documents also misrepresented the status of Lentuo's cash and cash equivalents.  (*Id.*).  Specifically, Plaintiff points to Lentuo's 2013 20-F statement that "We expect that our current cash and cash equivalents and cash flow from operations will be sufficient to meet our anticipated cash needs for working capital and certain capital expenditures for the next 12 months, and we may seek financing to fund additional capital expenditures."  (*Id.* ¶ 52 (emphasis omitted)).  Furthermore, Plaintiff points to Lentuo's press releases issued June 27, 2014, September 29, 2014, and December 1, 2014, which each reported Lentuo's current cash and cash equivalents.  (*Id.* ¶¶ 53, 55, 57).  According to Plaintiff, these statements were materially false and misleading because they failed to disclose that "Lentuo's business was faltering as of 2013, and its cash and cash equivalents were not sufficient to meet its needs for working capital and capital expenditures."  (*Id.* ¶ 59).

## II.     JUDICIAL NOTICE

Lentuo requests the Court to take judicial notice of Lentuo's publicly-available SEC filing (Exhibit A) and press releases (Exhibits C, E, H–J).  (Request for Judicial Notice ("RJN"), Docket No. 28).  Lentuo's request is **GRANTED** as to these Exhibits. *See Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) ("[The court] may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings."); *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 814, 817 (C.D. Cal. 2004) ("[T]he Court may take judicial notice of press releases.").

Lentuo also requests the Court to take judicial notice of the May 28th GeoInvesting Report and June 5th GeoInvesting Reply (collectively, "GeoInvesting Articles") (Exhibits B and D), BBT Article (Exhibit F), and the due diligence report available on Trust-trust.com (Exhibit G).  Lentuo's request to take judicial notice is **DENIED** as to these Exhibits, but the Court will consider these documents under the "incorporation by reference" doctrine because these are documents alleged in the First Amended Complaint whose authenticity is not disputed by either party. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV-15-1862-MWF-MRWx**          Date:  **January 7, 2016**
Title:      Felipe Garcia, et al. -*v*- Hetong Guo, et al.

certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (Under the "incorporation by reference" doctrine, we may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." (alteration in original) (internal quotation marks omitted)).  Lentuo "may offer such [documents], and the [Court] may treat such [documents] as part of the complaint, and thus may assume that [their] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Finally, Lentuo requests that the Court take judicial notice of the accompanying certified translations of the BBT Article and due diligence report available on Trust-trust.com.  Lentuo's request is **GRANTED** as to these certified translations accompanying Exhibits F and G.  *See In re Yahoo! Inc. Sec. Litig*., No. C 11-02732 CRB, 2012 WL 3282819, at *2 (N.D. Cal. Aug. 10, 2012) *aff'd,* 611 F. App'x 387 (9th Cir. 2015) ("In general, courts have taken judicial notice of certified translations of material relied upon by the Complaint, but in situations where the authenticity of the document is not at issue.").

## III.    OBJECTIONS TO OPPOSITION

In its Reply, Lentuo objects to new allegations and documents referenced in the Opposition. (Reply at 3–5).  The Court agrees that the Opposition contains new allegations and also submits two documents not previously referenced in the FAC.  Nevertheless, the Court will consider these allegations and documents for purposes of this Motion to determine whether, if applicable, the Motion should be granted with or without leave to amend.  As discussed below, where the Court rules in favor of Plaintiff but must rely on new allegations or documents submitted in the Opposition, the Court grants the Motion with leave to amend because amendment would not be futile.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-1862-MWF-MRWx            Date:  January 7, 2016
Title:      Felipe Garcia, et al. -v- Hetong Guo, et al.

## IV.   LEGAL STANDARD

"A Rule 12(b)(6) dismissal is proper only where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1102 (C.D. Cal. 2012) (internal quotation omitted).  In reviewing a motion to dismiss, the Court must accept all factual allegations pleaded in the complaint as true.  *Id.*

Securities fraud class actions are held to the heightened pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA") and Federal Rule of Civil Procedure 9(b).  *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 313 (2007) (reversing dismissal of securities fraud class action and clarifying that plaintiff alleging fraud in § 10(b) action need only plead facts rendering inference of scienter at least as likely as any plausible opposing inference).  "The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate, or defraud."  *Id.* at 313 (internal quotation omitted).

Specifically, a complaint must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading," and "state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  Additionally, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  The Ninth Circuit provides a two-part inquiry for scienter: (1) "whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter," and (2) "if no individual allegation is sufficient . . . whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *New Mexico State Inv. Council v. Ernst & Young*, 641 F.3d 1089, 1095 (9th Cir. 2011) (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991–92 (9th Cir. 2009)).  The requisite state of mind must be a "departure from the standards of ordinary care that presents a danger of misleading buyers that is either known to the defendant or so obvious that the actor must have been aware of it."  *Zucco*, 552 F.3d at 991 (internal quotations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV-15-1862-MWF-MRWx**          Date:  **January 7, 2016**
Title:      Felipe Garcia, et al. *-v-* Hetong Guo, et al.

In sum, a complaint "must contain allegations of specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (affirming the dismissal of a securities fraud class action on the ground that optimistic statements made eight months before merger and conclusory allegations that statements were false when made were insufficient to raise a strong inference that defendants intentionally or with deliberate recklessness made false or misleading statements to investors).  "If a plaintiff fails to plead either the alleged misleading statements or scienter with particularity, the complaint must be dismissed." *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1018 (S.D. Cal. 2005) (internal quotation omitted) (denying motions to dismiss securities class action because, among other things, investors sufficiently stated facts that supported strong inference that representations were false or misleading when made and cautionary statements were too generic to invoke safe harbor protection).  These heightened requirements "prevent[] a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (affirming dismissal of putative securities fraud class action because, among other things, investors failed to allege loss causation, investors failed to adequately plead scienter, and complaint lacked specificity required to adequately allege falsity).  On the other hand, "courts must be careful not to set the hurdles so high that even meritorious actions cannot survive a motion to dismiss.  Such a regime would defeat the remedial goals of the federal securities laws." *Id.*

## V.    **DISCUSSION**

To state a claim under Section 10(b) of the Exchange Act, a plaintiff must allege the following elements: (i) a material misrepresentation (or omission); (ii) scienter (a wrongful state of mind); (iii) a connection with the purchase or sale of a security; (iv) reliance (also known as "transaction causation"); (v) economic loss; and (vi) loss causation (a causal connection between the material misrepresentation and the loss). *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-15-1862-MWF-MRWx            Date:  January 7, 2016**
**Title:      Felipe Garcia, et al. -*v*- Hetong Guo, et al.**

Section 20(a) of the Securities Exchange Act of 1934 provides for liability of a "controlling person."  15 U.S.C. § 78t(a).  To establish a cause of action under this provision, a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b-5, and then show that the defendant exercised actual power over the primary violator. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  Lentuo only expressly challenges the adequacy of allegations supporting Claim I, which arises under Section 10(b) and Rule 10b-5.  (*See generally* Motion).  Therefore, the Court's analysis focuses on Plaintiff's allegations under Claim I.

Lentuo challenges Plaintiff's claim as to three elements: the existence of an actionable misstatement/omission, loss causation, and scienter.

## A.      Material Misstatements or Omissions

To give rise to an actionable claim for securities fraud, a statement or omission "must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  In general, "whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact." *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995) (superseded by statute on other grounds) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1268 (9th Cir. 1987)).  "[O]nly if the adequacy of the disclosure . . . is so obvious that reasonable minds could not differ are these issues appropriately resolved as a matter of law." *Id.* (internal quotations omitted).

### 1.      LE's Loans

Plaintiff alleges that, between May 15, 2014, and December 1, 2014, Lentuo's 2013 20-F as well as a series of press releases omitted material information regarding the Loans.  (FAC ¶¶ 49–58).  Specifically, Plaintiff claims that the accompanying balance sheet in these documents only listed one long-term loan that Lentuo obtained

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV-15-1862-MWF-MRWx**          Date:  **January 7, 2016**
Title:       Felipe Garcia, et al. -*v*- Hetong Guo, et al.

from Shanghai Pudong Development Bank.  (*Id.*).  According to Plaintiff, these balance sheets were misleading for failing to disclose the Loans amounting to RMB 250 million.  (*Id.*).

Lentuo first challenges the reliability of the evidence cited in Plaintiff's FAC as to the existence, terms, and conditions of the Loans.  Lentuo further contends that, even accepting as true Plaintiff's allegations regarding the Loans, the FAC fails to adequately plead that Lentuo had a duty to disclose the Loans.

### a.  *Reliability of Plaintiff's Sources of Information*

As a preliminary matter, Lentuo argues that the FAC does not adequately plead the *existence* of the RMB 100 million trust loan and the *specific terms and conditions* of both Loans because Plaintiff's bases his allegations on unreliable sources of information. (Motion at 7).  Lentuo contends that the Court should disregard in general the GeoInvesting Articles on which Plaintiff relies because they were authored by a self-interested short-seller of Lentuo securities.  (*Id.* at 7).  As to the RMB 100 million trust loan, Lentuo points to Lentuo's denial of this particular loan in its June 5 Press Release.  (*Id.*; RJN Ex. E).  Furthermore, Lentuo argues that the due diligence report regarding this supposed loan "cannot be found on Baidu Wenku" as described in the GeoInvesting Articles.  (Motion at 7).  Lentuo acknowledged the existence of the RMB 150 million trust loan in its May 29th Press Release, but Lentuo challenges Plaintiff's characterization of the RMB 150 million trust loan, which is based on a Trust-trust.com document purporting to describe this loan's terms and conditions.  (*Id.* at 8).  Lentuo argues that Plaintiff has "plead no facts that establish the reliability of [Trust-trust.com], let alone the authenticity of materials found on the website." (*Id.*). Finally, Lentuo contends that Plaintiff's counsel has failed their Rule 11 obligations to conduct a reasonable inquiry prior to initiating this lawsuit, rather than relying exclusively on uncorroborated information.  (*Id.* at 9–10).

In his Opposition, Plaintiff argues that, on a motion to dismiss, even under the standards of pleading a claim under PSLRA, he is not required to support the FAC with evidence.  (Opposition at 8–10).  Furthermore, Plaintiff contends that it is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL


Case No.  **CV-15-1862-MWF-MRWx**              Date:  **January 7, 2016**

Title:       Felipe Garcia, et al. *-v-* Hetong Guo, et al.

procedurally improper to assess the veracity of the GeoInvesting Articles on Lentuo's Motion.  (*Id.*).  As to the RMB 100 million trust loan, Plaintiff acknowledges that the document on Baidu Wenku appears to be unavailable now but submits two additional documents in support of the FAC's allegations regarding the existence, terms, and conditions of this loan.  (Declaration of Jing Chen ("Chen Decl."), Docket No. 31-1, ¶¶ 5–7).  As to the RMB 150 million trust loan, Plaintiff explains that Trust-trust.com is an investment consulting website owned and maintained by Honghai Wealth, a Chinese-based wealth management company.  (Opposition at 10 n.3).  Finally, Plaintiff's counsel submitted a declaration attesting that she independently investigated the Loans by performing internet searches prior to initiating this action.  (Chen Decl. ¶ 4).

At the hearing, Lentuo's counsel argued that the GeoInvesting Articles, standing alone, are insufficient to serve as the basis for Plaintiff's allegations.  The Court agrees with Plaintiff that the FAC does not require evidentiary support.  "Even under the [PSLRA], plaintiffs are only required to plead facts, not to produce admissible evidence."  *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000).  In addition, Plaintiff does not rely exclusively on the GeoInvesting Articles as Lentuo contends.  For example, the First Amended Complaint includes reference to other documents from Trust-trust.com and Baidu Wenku.  (FAC ¶ 62).

Furthermore, Lentuo's argument that the Court should disregard the GeoInvesting Articles because GeoInvesting shorts Lentuo securities is unsupported by case law.  This argument has been rejected by multiple other district courts in cases involving the reliability of GeoInvesting publications on a motion to dismiss.  *See, e.g.*, *Feyko v. Yuhe Int'l, Inc.*, No. CV 11-05511 DDP PJWX, 2013 WL 816409, at *11 (C.D. Cal. Mar. 5, 2013) ("While the Yuhe Defendants argue that the GeoInvesting report is not credible, because, among other reasons, GeoInvesting was a short seller with an interest in diminishing Yuhe's stock value, the effects GeoInvesting's motive is 'a factual dispute not appropriate for resolution at this stage.'" (citation omitted)); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, No. 13 CV 214 HB, 2014 WL 285103, at *4 (S.D.N.Y. Jan. 27, 2014) ("Defendants claim that Geoinvesting is unreliable because it is a known short-seller, and had an incentive to magnify

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-1862-MWF-MRWx          Date:  January 7, 2016
Title:     Felipe Garcia, et al. -v- Hetong Guo, et al.

Longwei's financial distress.  But Plaintiffs do not rely solely on Geoinvesting, and courts in this district frequently accept allegations based on short-seller reports at this stage in a case."); *Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 CIV. 2700 PKC, 2012 WL 3957916, at *13 (S.D.N.Y. Sept. 10, 2012) ("Defendants' arguments against plaintiffs' reliance on the Absaroka Report, the GeoInvesting Alert and plaintiffs' purported partial SAIC filings are unavailing.  First, [defendants] argue that the Absaroka Report and GeoInvesting Alert reports are "unreliable" because they contain disclaimers and because their authors intended to short SPU stock.  A motion to dismiss is not the proper vehicle to test the credibility of witnesses or the manner in which the plaintiffs will attempt to prove their allegations." (citations omitted)).  "For purposes of this [M]otion, the [GeoInvesting Articles] exist as alleged, and the [FAC] plausibly alleges that the statements contained therein are true."  *Lewy*, 2012 WL 3957916, at *13.  The reliability of the GeoInvesting Articles is also bolstered by the fact that Lentuo subsequently acknowledged the existence of at least the RMB 150 million trust loan as described in the May 28th GeoInvesting Report.

The cases on which Lentuo relies are inapposite.  For example, the first two cases Lentuo cites in its Motion are procedurally distinguishable because the district court examined the reliability of the plaintiff's evidence on a motion for summary judgment.  *See Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1064 (C.D. Cal. 2002); *Bibolotti v. Am. Home Mortgage Servicing, Inc.*, No. 4:11-CV-472, 2013 WL 2147949, at *3 (E.D. Tex. May 15, 2013).  The district court in *Brown* was concerned with the reliability of a report published under a pseudonym, which Lentuo does not contend to be the case here.  *See* 875 F. Supp. 2d at 1108.  The district court in *Redwen v. Sino Clean Energy, Inc.* actually denied the defendant's motion to strike, citing to the high bar that the defendant must meet in demonstrating that that the disputed reports "have no possible bearing on the subject matter of this litigation."  No. CV 11-3936 PA SSX, 2012 WL 1991762, at *6 (C.D. Cal. June 4, 2012).  The district court in *In re McKesson HBOC, Inc. Securities Litigation* explained that the touchstone to determining "whether plaintiffs have alleged facts sufficient to raise a strong inference of scienter" is whether the source of information "includes numerous factual particulars and is based on an independent investigative effort."  126 F. Supp. at 1272.  Here, the GeoInvesting Articles meet this requirement

_____

**CIVIL MINUTES—GENERAL**                                          **12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV-15-1862-MWF-MRWx**          Date:  **January 7, 2016**
Title:        Felipe Garcia, et al. -*v*- Hetong Guo, et al.

because they contain numerous factual particulars specific to both loans, rely on other publicly available documents regarding the loans, and were based on details gleaned from phone conversations with the management companies of the two loans.  (FAC ¶ 62).

If the Court were prepared to look outside the FAC, then at this stage, the Court is satisfied with Plaintiff's explanation of Trust-trust.com as an investment consulting website maintained by a wealth management company.  (Opposition at 10 n.3).  As for the missing document on Baidu Wenku describing the RMB 100 million trust loan, Plaintiff submits two additional documents in its place.  (Chen Decl. ¶¶ 5–7).  Lentuo's only objection is that these documents were not alleged in the FAC (Motion at 4), and therefore, the Court **GRANTS** Plaintiff leave to file a Second Amended Complaint to incorporate these documents into his allegations.

Finally, the Court is satisfied with counsel's representations regarding her Rule 11 pre-filing investigation.  (Chen Declaration ¶ 4).  Lentuo cites to no authority that online searches performed regarding the Loans are *per se* inadequate.  Furthermore, the Court is skeptical that an alleged failure to conduct a reasonable inquiry alone can serve as the basis for a motion to dismiss instead of a Rule 11 motion.

### b.  *Lentuo's Duty to Disclose*

Lentuo next challenges whether Lentuo had a duty to disclose the Loans even accepting as true Plaintiff's allegations regarding the Loans.  (Motion at 12–17).  Plaintiff argues that Lentuo had a duty to disclose based on three independent grounds: (1) the Loans were related-parties transactions; (2) the Loans violated the Call Option Agreement among Lentuo, its subsidiaries, and the VIEs; and (3) the Loans were secured by Guo's personal guarantee, which could compromise Guo's ownership interest in Lentuo.  (Opposition at 12–16).

The Court concludes that, based on these allegations, Lentuo could have had a duty to disclose because the Loans were transactions of a related party.  The SEC relies on the Financial Accounting Standards Board ("FASB") to adopt the principles that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-15-1862-MWF-MRWx**          **Date:  January 7, 2016**

Title:       Felipe Garcia, et al. -*v*- Hetong Guo, et al.

govern accounting standards for SEC filings.  *See* Thomas Lee Hazen, 2 *The Law of Securities Regulations* § 9.6 (6th ed. 2009).  The FASB's Statement of Financial Accounting Standards ("FAS") No. 57 requires disclosure of all material related party transactions.  FAS No. 57(2).  The glossary of FAS No. 57 includes in its definition of related parties the "affiliates of the enterprise."  *Id.* at (24).  "Affiliate" is defined as "[a] party that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with an enterprise."  *Id.*  The glossary defines "control" as "[t]he possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an enterprise through ownership, by contract, or otherwise."  *Id.*  These definitions accord with those found in SEC Regulation S–X.  *See* 17 C.F.R. § 210.1-02(b), (g).  Financial statements filed with the SEC that are not consistent with GAAP are presumed misleading.  17 C.F.R. § 210.4–01(a)(1).

Plaintiff has pleaded sufficient facts, taken as a whole, to support an inference that Lentuo and LE are related parties under GAAP and, accordingly, that Lentuo's failure to disclose the Loans was misleading.  By definition, Lentuo and LE are related parties because they are under common control by Guo.  The FAC alleges that LE is majority-owned and controlled by Guo, who holds 75% of LE.  (FAC ¶¶ 33, 61).  The FAC further alleges that Guo is also the founder, chairman, and largest shareholder of Lentuo (owning 46% of outstanding Lentuo shares).  (*Id.* ¶ 5).  Because Lentuo and LE are under common control, they are related parties as defined by FAS No. 57.  *See In re Montage Tech. Grp. Ltd. Sec. Litig*., 78 F. Supp. 3d 1215, 1224 (N.D. Cal. 2015) (finding that defendant company and its largest distributor were related parties under FAS No. 57 because an officer of defendant company was also the majority owner of a third company that wholly owned and controlled the distributor).

The materiality of the omission of the Loans taken out by a related party is also sufficiently pleaded.  Materiality is established when there is "a substantial likelihood that disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered 'the total mix' of information made available."  *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 38 (2011).  Plaintiff alleges that Lentuo "is a holding company that does not conduct any substantive operations on its own but instead conducts its business operations through its variable interest entities ("VIEs")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL


**Case No.  CV-15-1862-MWF-MRWx          Date:  January 7, 2016**
Title:       Felipe Garcia, et al. -*v*- Hetong Guo, et al.

---

located in the PRC."  (FAC ¶ 28).  Furthermore, "[p]ursuant to the VIE Arrangements, Lentuo, through Lentuo Hong Kong and Lentuo Beijing, obtained effective control over nine wholly-owned subsidiaries of Lentuo Electromechanical (the "Operating Entities"), including the right to substantially all of the economic benefits and the obligation to fund all of the expected losses of the Operating Entities.  The Operating Entities, therefore, [became] Lentuo's VIEs."  (*Id.* ¶ 31).  According to the FAC, "[a]n important part of the VIE Arrangements was the 'Exclusive Technology Consulting and Service Agreements' ('Service Agreement'), under which Lentuo Beijing provides certain consulting services and resources to the Operating Entities, and in return, Lentuo Beijing is entitled to charge services fees on a quarterly basis of up to 100% of the respective Operating Entity's quarterly profits."   (*Id.* ¶ 32).  The FAC also alleges that the loan documents reveal that the designated "Source of Payback" for the RMB 150 Million Loan was to be the revenues of these VIEs.  (*Id.* ¶ 68).  In other words, the "revenue generated from all 4S stores of LE would be used to pay back the loan; the 4S stores of LE are, of course, Lentuo's VIEs and Lentuo's sole source of revenue." (Opposition at 12).  Furthermore, the FAC alleges that the trust documents for the RMB 100 Million Trust Loan are even more explicit in referring to Lentuo as a source of repayment.  (*Id.* ¶ 72).  Based on these allegations, where LE's VIEs "generate most of [Lentuo's] revenue, it is substantially likely that a reasonable investor would find that disclosure of the omitted [Loans] would significantly alter the 'total mix of information.'"  *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d at 1225 (quoting *Matrixx Initiatives*, 563 U.S. at 38)); *see also No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003) ("[A] fact is material if there is a substantial likelihood that a reasonable investor would consider it important in his or her decision making." (internal quotation marks and citation omitted)).

At the hearing, Lentuo's counsel pointed out that the RMB 150 million trust loan is personally guaranteed by Guo's real estate, which, according to Lentuo, suggests that any diversion of revenues from Lentuo's VIEs as a "source of payback" is speculative at best.  Furthermore, Lentuo's counsel argued that the RMB 150 million trust loan was not executed during the period that would have been covered by Lentuo's 2013 20-F disclosure.  These arguments, however, are factual disputes

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-1862-MWF-MRWx                Date:  January 7, 2016
Title:      Felipe Garcia, et al. -v- Hetong Guo, et al.

between the parties.  It would be premature for the Court to assess what the parties to the loan agreement had contemplated in terms of payment and security.  And the answer may require analysis under Chinese law regarding the difference between "sources of payback" and "personal guarantees," which the Court is not prepared to engage in on this Motion.

Because the Court concludes that Lentuo had a duty to disclose the Loans as material related-party transactions, the Court does not need to reach the other two independent reasons Plaintiff cites as bases for Lentuo's duty to disclose.

Lentuo also contends that Plaintiff's "related-party transaction" theory is not adequately pled in the FAC.  (Reply at 5).  The Court agrees that this theory is only expressly pled in passing as a section header.  (FAC ¶¶ 85–86 ("Even if the RMB 250 Million Trust Loans were 'Unrelated' to Lentuo, Defendants are still Liable")).  Therefore, the Court **GRANTS** Lentuo's Motion with leave to amend.  Plaintiff shall file a Second Amended Complaint to remedy this deficiency.

### 2.    *Cash Shortage*

Plaintiff also alleges that, between May 15, 2014, and December 1, 2014, Lentuo's 2013 20-F as well as a series of press releases misrepresented the status of Lentuo's cash and cash equivalents.  (FAC ¶¶ 49–59).  Specifically, Plaintiff points to Lentuo's 2013 20-F statement that "We expect that our current cash and cash equivalents and cash flow from operations will be sufficient to meet our anticipated cash needs for working capital and certain capital expenditures for the next 12 months, and we may seek financing to fund additional capital expenditures."  (*Id.* ¶ 52 (emphasis omitted)).  Furthermore, Plaintiff points to Lentuo's press releases issued June 27, 2014, September 29, 2014, and December 1, 2014, which each reported Lentuo's current cash and cash equivalents.  (*Id.* ¶¶ 53, 55, 57).  According to Plaintiff, these statements were materially false and misleading because they failed to disclose that "Lentuo's business was faltering as of 2013, and its cash and cash equivalents were not sufficient to meet its needs for working capital and capital expenditures."  (*Id.* ¶ 59).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV-15-1862-MWF-MRWx**          Date:  **January 7, 2016**
Title:       Felipe Garcia, et al. -*v*- Hetong Guo, et al.

As with Plaintiff's allegations regarding the Loans, in its Motion, Lentuo similarly challenges the reliability of the BBT Article, which Plaintiff bases his allegations about Lentuo's severe cash shortage.  The Court does not need to reach the reliability of the BBT Article because, as discussed below, the Court concludes that Plaintiff has failed to adequately plead the falsity of Lentuo's relevant disclosures regarding its cash reserves.

Lentuo asserts that the allegedly misleading statements about Lentuo's cash and cash equivalents are non-actionable forward-looking statements.  (Motion at 17–18). Under the PSLRA's safe harbor, forward-looking statements are not actionable if either (1) they are identified as such and accompanied by meaningful cautionary language, or (2) the plaintiff fails to allege particularized facts demonstrating that the statements were made with actual knowledge of their falsity.  15 U.S.C. § 78u-5(c)(1); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-12 (9th Cir. 2010).  The specific statement in Lentuo's 2013 20-F cited by Plaintiff was indeed a forward-looking statement as evidenced from the words "[w]e expect . . . for the next 12 months." (FAC ¶ 52).  Therefore, the FAC must plead particularized facts demonstrating that Lentuo knew that this statement was false when made.

Plaintiff argues that the 2013 20-F was filed five months after Lentuo secretly raised RMB 250 million via the Loans (Opposition at 17), but Lentuo correctly points out that this argument depends on the assumption that the funds raised went to shoring up Lentuo's allegedly depleted cash reserves (Reply at 15).  Plaintiff's own pleadings indicate the Loans were used to *expand* LE's 4S operations in Beijing (FAC ¶ 64), which undercuts the necessary assumption that Lentuo's business was faltering, hemorrhaging money, and desperately short of operating cash as Plaintiff alleges (*id.* ¶ 17).  Furthermore, by the time Lentuo filed its 2013 20-F in May 2014, the Beijing expansions were already underway, which seems to support the veracity of Lentuo's forward-looking statement that "our *current* cash and cash equivalents and cash flow from operations will be sufficient to meet our *anticipated* cash needs for working capital and certain capital expenditures for the next 12 months."  (FAC ¶ 52 (emphasis added)).  Furthermore, Plaintiff has not alleged any facts that demonstrate the falsity of the numbers reported as Lentuo's cash and cash equivalents in its press releases.

---

**CIVIL MINUTES—GENERAL**                                                    **17**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-1862-MWF-MRWx            Date:  January 7, 2016

Title:      Felipe Garcia, et al. -*v*- Hetong Guo, et al.

Plaintiff argues that the BBT Article indicated that (1) a responsible party at a Mazda 4S store reported to BBT that Lentuo began having problems at the end of 2014, and (2) 4S dealerships in China have been facing an "unprecedented death trail starting from 2013."  (Opposition at 18).  From these two premises, Plaintiff argues that "it is ***certainly*** plausible that Lentuo's cash issues were present on May 15, 2014[,] when it filed its 20-F."  (*Id.* (emphasis in original)).  The Court notes that the problem reported by Mazda 4S store employee did not specifically state that Lentuo began having cash problems at the end of 2014.  (RJN, Ex. G).  Instead, the employee indicated, for unspecified reasons, that "new cars were unavailable from the manufacturers."  (*Id.*).  Furthermore, Plaintiff cannot rely generally on the landscape of 4S dealerships in China to meet his burden of alleging particularized facts that demonstrate Lentuo's 2013 20-F statement was made with actual knowledge of falsity.

Therefore, Plaintiff has failed to allege particularized facts as required for Lentuo's forward-looking statement in its 2013 20-F.  Plaintiff has also failed to allege facts supporting a plausible inference that Lentuo's reporting of cash and cash equivalents in press releases were false.  The Motion is **GRANTED** *with leave to amend* as to the portions of Plaintiff's claims as they relate to Lentuo's alleged cash shortage.

### B.     Loss Causation

To recover for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must establish "'loss causation,' i.e., a causal connection between the material misrepresentation and the loss."  *Dura Pharms.*, 544 U.S. at 342.  One way in which the plaintiff can prove this element is by showing that a corrective disclosure caused the stock price to decline.  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008) (stating that the market must "learn[ ] of and react[ ] to [the] fraud"); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1026 (9th Cir. 2005).  A "corrective disclosure" is a disclosure that reveals the fraud, or at least some aspect of the fraud, to the market.  *In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1019 (S.D. Cal. 2011).  Such a requirement ensures that the market actually learns of and reacts to the specific fraud alleged by the plaintiff, as opposed to reacting to reports of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-1862-MWF-MRWx          Date:  January 7, 2016
Title:       Felipe Garcia, et al. -v- Hetong Guo, et al.

defendant's poor financial health generally.  *See, e.g., In re Daou Sys., Inc.*, 411 F.3d at 1025–27.

The Ninth Circuit explained in *In re Gilead Sciences Securities Litigation* that loss causation "is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss."  536 F.3d 1049, 1057 (9th Cir. 2008) (citing favorably to *Emergent Capital Inv. Mgmt., LLC. v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003)). "So long as the complaint alleges facts that, if taken as true, plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate."  *Id.*  The Ninth Circuit further instructed that "[t]his is not 'a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" loss causation."  *Id.* (citation omitted).

Plaintiff alleges two corrective disclosures.  The June 5th GeoInvesting Reply "made clear that Lentuo secretly borrowed RMB 250 million through two trust loans and secured it with revenues from Lentuo's 4S shops and [] Guo's assets." (Opposition at 22).  The BBT Article revealed, among other things, that Lentuo was having cash problems, and that Lentuo's show cars had their keys taken away by banks due to Lentuo's cash problems, and that Lentuo's 4S shops have essentially stopped selling new cars."  (*Id.*).

As to the June 5th GeoInvesting Reply, Lentuo argues that this cannot qualify as a corrective disclosure because it revealed "nothing 'new' to the market in light of the initial May 28th GeoInvesting Report that was published one week prior."  (Motion at 20).  Indeed, as Lentuo contends, the district courts in the Ninth Circuit seem to agree that corrective disclosures, by definition, require new information to be revealed to the market.  *See, e.g., In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1019 (S.D. Cal. 2011) ("It stands to reason then that '[a] disclosure that does not reveal anything new to the market is, by definition, not corrective.'" (citing *Teamsters Local 617 Pension & Funds v. Apollo Grp., Inc.*, 633 F.Supp.2d 763, 818 (D. Ariz. 2009)); *In re Maxim Integrated Products, Inc. Sec. Litig.*, 639 F. Supp. 2d 1038, 1048 (N.D. Cal. 2009) ("[A] disclosure that 'does not reveal anything new to the market is, by definition, not corrective.'" (citing *In re Apollo Group, Inc. Sec. Litig.*, No. C 04–2147

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV-15-1862-MWF-MRWx**                Date:  **January 7, 2016**
Title:      Felipe Garcia, et al. -*v*- Hetong Guo, et al.

PHX, 2008 WL 3072731, at *2 (D. Ariz. Aug. 4, 2008))); *In re Herbalife, Ltd. Sec. Litig.*, No. CV 14-2850 DSF JCGX, 2015 WL 1245191, at *4 (C.D. Cal. Mar. 16, 2015) ("[T]he mere repackaging of already-public information by an analyst or short-seller is simply insufficient to constitute a corrective disclosure." (citing *Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013))).

However, the Ninth Circuit has not expressly ruled on this issue.  Although the Ninth Circuit cited favorably to the Eleventh Circuit's decision in *Meyer*, which bars the "mere repackaging of already-public information" as a corrective disclosure, *see* 710 F.3d at 1199, the relevant portion of the Ninth Circuit's opinion relying on *Meyer* was limited to the issue of whether announcing an investigation "reveals" fraudulent practices to the market.  *See Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014), *as amended* (Sept. 11, 2014) ("The announcement of an investigation does not "reveal" fraudulent practices to the market.  Indeed, at the moment an investigation is announced, the market cannot possibly know what the investigation will ultimately reveal . . . .  Accordingly, we hold that the announcement of an investigation, without more, is insufficient to establish loss causation.").

Contrary to a categorical bar on disclosures that do not reveal any new information to the market, the Ninth Circuit in a 2010 unpublished memorandum endorsed a corrective disclosure published after the market already possessed the relevant information regarding the alleged fraud.  Although not precedential, the Court references this unpublished memorandum as persuasive authority pursuant to Ninth Circuit Rule 36-3(b).  In *In re Apollo Group, Inc. Securities Litigation*, the plaintiff class alleged that the for-profit education provider, Apollo Group, made material misstatements about a Department of Education ("DOE") investigation regarding its student recruiting policies.  *In re Apollo Grp., Inc. Sec. Litig.*, No. CV042147PHXJAT(LEAD), 2008 WL 3072731, at *1 (D. Ariz. Aug. 4, 2008) *rev'd and remanded*, No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010).  In September 2004, four widely read newspapers published articles relating to Apollo's recruiting practices and the settlement it ultimately reached with the DOE.  *Id.* Apollo's stock price did not decline.  Five days later, a UBS analyst published a report—containing no new facts—that cast Apollo in a negative light and downgraded

_____

**CIVIL MINUTES—GENERAL**                                    **20**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV-15-1862-MWF-MRWx**          Date:  **January 7, 2016**
Title:      Felipe Garcia, et al. -*v*- Hetong Guo, et al.

its buy-sell rating from "Neutral" to "Reduce."  *Id*.  The next day, Apollo's stock price dropped significantly.  *Id*.  Following a full trial, the jury returned a verdict in favor of the plaintiff class.  *Id.* at *2.  Apollo moved for judgment as a matter of law notwithstanding the verdict, and the district court granted the motion, holding that the UBS report could not constitute a corrective disclosure because it disclosed no new facts and, since no new facts came to the market after the newspaper articles were published approximately a week beforehand, loss causation could not be established.  *Id.* at *3–4.

In an unpublished memorandum opinion, the Ninth Circuit reversed.  *In re Apollo Grp., Inc. Sec. Litig*., No. 08-16971, 2010 WL 5927988, at *1 (9th Cir. June 23, 2010).  Citing its previous holding in *In re Gilead Sciences Securities Litigation*, the Ninth Circuit held that a jury could reasonably conclude that the UBS report did constitute a corrective disclosure that provided "additional or more authoritative fraud-related information that deflated the stock price."  *Id*.  "In this regard, the UBS report could constitute a corrective disclosure because, although the market had all the information contained in the report, the market 'failed to appreciate [the] significance' or the 'intensity and credibility' of the information previously disclosed.  Michael A. Kitson, *Controversial Orthodoxy: The Efficient Capital Markets Hypothesis and Loss Causation*, 18 Fordham J. Corp. & Fin. L. 191, 211-13 (2012) (citing *In re Apollo Grp., Inc. Sec. Litig*., 2010 WL 5927988, at *1).

The Court recognizes that the UBS report is distinguishable in that the report also downgraded the defendant's buy-sell rating.  However, the June 5th GeoInvesting Reply is largely similar to the UBS report because the June 5th GeoInvesting Reply contained a more comprehensive analysis of the alleged fraudulent conduct in light of Lentuo's May 29th Press Release, which admitted only the existence of one loan, did not expressly deny the existence of the other loan, and also disputed the May 28th GeoInvesting Report's characterization of the implications of the loan.  Therefore, to an extent, the June 5th GeoInvesting Reply did contain new information (*i.e.*, analysis of deficiencies and new facts asserted in Lentuo's May 29th Press Release).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV-15-1862-MWF-MRWx**          Date:  **January 7, 2016**

Title:      Felipe Garcia, et al. *-v-* Hetong Guo, et al.

_____

For example, the June 5th GeoInvesting Reply points out that, from Lentuo's May 29th Press Release, "[i]t's not clear whether [Lentuo] is denying the existence of [the RMB 100 million] loan."  (RJN, Ex. D).  At the hearing, Lentuo's counsel argued that it would be reasonable to conclude, from the May 29th Press Release, that Lentuo had in effect denied the existence of the RMB 100 million trust loan by only expressly recognizing the RMB 150 million trust loan.  While this may prove true, construing all reasonable inferences in Plaintiff's favor, it is plausible that Lentuo's failure to explicitly dispel suspicions regarding the RMB 100 million trust loan raised additional concerns that were captured in the June 5th GeoInvesting Reply.  In addition, the June 5th Reply includes a new citation to Lentuo's 2013 20-F regarding, as discussed further in the following section, Lentuo's consolidation of LE's historical financials.  (*Id.*).  Based on this newly identified previous consolidation, the June 5th GeoInvesting Reply argues that the Loans should have been accounted for or at least disclosed in Lentuo's financial statements.

Furthermore, even if the June 5th GeoInvesting Reply contained no new facts regarding the alleged fraud, in light of the Ninth Circuit's decision in *In re Apollo Group, Inc. Securities Litigation*, the Court cannot hold as a matter of law that the June 5th GeoInvesting Reply does not qualify as a corrective disclosure on the basis that it did not reveal any new information to the market.  As the Ninth Circuit has instructed, proof of loss causation is better addressed at trial and not on a Rule 12(b)(6) motion to dismiss.  *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1057.  So long as the FAC alleges enough facts "to raise a reasonable expectation that discovery will reveal evidence of loss causation," the FAC survives a Rule 12(b)(6) motion to dismiss.  *Id.* (citation omitted).  Here, the FAC alleges enough facts that raise a reasonable expectation that discovery will reveal evidence that the market indeed reacted to the June 5th GeoInvesting Reply.

Lentuo contends the May 28th GeoInvesting Report could not qualify as a corrective disclosure given the one-week delay in the market's reaction.  (Motion at 20).  But this argument is inconsistent with the Ninth Circuit's rejection of "a bright line rule requiring an immediate market reaction" because "[t]he market is subject to distortions that prevent the ideal of a free and open public market from occurring."  *In*

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV-15-1862-MWF-MRWx**               Date:  **January 7, 2016**
Title:        Felipe Garcia, et al. -*v*- Hetong Guo, et al.

*re Gilead Scis. Sec. Litig*., 536 F.3d at 1057–58 (citations omitted).  "A limited temporal gap between the time a misrepresentation is publicly revealed and the subsequent decline in stock value does not render a plaintiff's theory of loss causation per se implausible."  *Id.* (citation omitted).  However, because Plaintiff does not rely on the May 28th GeoInvesting Report as a corrective disclosure, the Court will not reach this issue.

Lentuo also faults the June 5th GeoInvesting Reply as "too speculative and hypothetical" to constitute a corrective disclosure.  "[T]he [June 5th GeoInvesting Reply] equivocates about the implications of LE's credit facilities, merely noting that "[Lentuo]'s auditor should review the facts and circumstances related to the trust loans extended to LE . . . ."  (Reply at 7).  Lentuo, however, overlooks GeoInvesting's conclusion that, "[i]n our opinion, [Lentuo's] financial statements should be restated to reflect the loans." (RJN, Ex. D).  GeoInvesting further stated that "[i]t is highly likely that the trust loans incurred by LE should be accounted for or at least disclosed in [Lentuo's] financial statements."  (*Id.*).

As to the BBT Article, the Court does not reach the issue of whether it qualifies as a corrective disclosure regarding Lentuo's alleged cash shortage because, as discussed above, the FAC fails to allege with particularized facts the falsity of Lentuo's statements regarding its cash reserves.

### C.    Scienter

The PSLRA requires that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2)(A).  To satisfy the requisite state of mind element, "a complaint must allege that the defendant[] made false or misleading statements either intentionally or with deliberate recklessness."  *Zucco*, 552 F.3d at 991.

In *Tellabs*, the Supreme Court clarified the inquiry for determining whether a plaintiff's allegations are sufficient to establish scienter.  551 U.S. at 321.  Accepting all factual allegations in the complaint as true, a court must "consider the complaint in its entirety," and determine "whether *all* of the facts alleged, taken collectively, give

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL


**Case No.  CV-15-1862-MWF-MRWx**          **Date:  January 7, 2016**

Title:      Felipe Garcia, et al. -*v*- Hetong Guo, et al.

---

rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Id.* at 322–23 (emphasis in the original).  Under the *Tellabs* analysis, "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id*. at 324.  "A defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter, *i.e.*, knows that the statement is false, or is at least deliberately reckless as to its falsity, at the time that he or she makes the statement."  *In re Apple Comp., Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002).  Based on Plaintiff's allegations, the relevant corporate officer is Guo.

The Court concludes that the FAC's allegations, viewed as a whole, establish scienter:

*First*, the FAC alleges that Guo knew of the Loans because he not only signed the papers related to the Loans but also personally guaranteed the Loans by providing joint and several liability for them with his wife.  (FAC ¶¶ 62, 89).  Lentuo does not dispute Guo's knowledge of the Loans.

*Second*, the FAC contains allegations supporting an inference that Guo knew of Lentuo's duty to disclose the Loans as related-party transactions.  The Loans cited to Lentuo as a source of repayment and a basis for risk control.  (*Id.* ¶ 62 (The "Risk Control" section of the trust description for the RMB 100 million issuance specifically references Lentuo's revenue and assets as 'reliable' sources of paying back the loan.")).  Furthermore, in Lentuo's 2013 20-F, Lentuo had included the following statement:

> Furthermore, as our reorganization was conducted
> between entities under the common control of Mr.
> Hetong Guo, the historical financial results, assets and
> liabilities of the affiliated entities and [LE] have been
> reflected in our consolidated financial statements as if the
> current organizational structure had always existed

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV-15-1862-MWF-MRWx**          Date:  **January 7, 2016**
Title:      Felipe Garcia, et al. -*v*- Hetong Guo, et al.

(*Id.* ¶ 64).

Lentuo contends that this statement referred to consolidation of LE's *historical* financials up to December 31, 2009, because of a 2010 reorganization in which LE transferred its assets to one of the VIEs so that "LE no longer directly operated or owned any dealerships, but instead owned Lentuo's VIEs (which own dealerships or subsidiaries which own dealerships)." (Motion at 14–15).  This argument is not persuasive because it does not account for why, absent a related-party transaction obligation, Lentuo felt compelled to consolidate LE's financials because *LE* had reorganized in 2010.  At a minimum, Lentuo's consolidation and disclosure of LE's historical financial information supports an inference that Lentuo was aware of its duty to comply with the disclosure of related-party transactions.  *Cf. In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1226 (N.D. Cal. 2015) ("Montage has previously flagged related party transactions in its financial statements, which shows that it was well aware of its duty to comply with this disclosure requirement.").

*Third*, as discussed above, the FAC contains allegations that information about the Loans would have been material to a reasonable investor's decision-making because the Loans could compromise Lentuo's only source of revenue.  (FAC ¶¶ 28, 31, 68).

*Fourth*, the FAC also pleads adequate facts supporting an inference that Lentuo was motivated to conceal the Loans as it prepared for an additional round of fundraising in the United States.  (FAC ¶¶ 84–86).  Four months after Lentuo filed its 2013 20-F, Lentuo filed a Form F-3 with the SEC seeking to register $300 million worth of securities.  (*Id.* ¶ 85).  Therefore, Lentuo "had an incentive to present Lentuo as financially-sound in order to attract investors in the U.S."  (Opposition at 20).

In sum, the allegations of the FAC support an inference that Lentuo knew, through the knowledge of Guo, that, at the time the statements in question were made, Lentuo had a duty to disclose the Loans.  Such conduct gives rise to an inference of scienter.  This conclusion is further supported by case law that, "while related-party

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV-15-1862-MWF-MRWx**                Date:  **January 7, 2016**
Title:       Felipe Garcia, et al. -*v*- Hetong Guo, et al.

transactions are not per se unlawful, we view them with 'extreme skepticism,' especially when they go undisclosed." *S.E.C. v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 389 (S.D.N.Y. 2014) (citing *McCurdy v. S.E.C.,* 396 F.3d 1258, 1261 (D.C. Cir. 2005)).  "[T]he 'securities laws do not require that a defendant know the precise accounting treatment that would have been applied before [he] can have the requisite scienter; the [plaintiff] need only demonstrate that [the defendant] knew of facts that contradicted the substance of the reported accounting.'" *Id.* (citations omitted).  As the central figure of Lentuo as well as LE, the allegations support a strong inference of scienter: Guo knew that Lentuo's disclosures omitted essential details about the related-party transactions.  "[H]is lack of accounting training or expertise is no bar to liability." *Id.* at 394.

Therefore, the FAC's allegations, taken as a whole, create an inference of scienter at least as compelling as an inference of innocent conduct.

## VI.  CONCLUSION

The Motion is **GRANTED** *with leave to amend*.  Plaintiff shall file a Second Amended Complaint by January 25, 2016.  Defendants shall respond to the Second Amended Complaint by February 22, 2016.  While the Court grants leave to file a Second Amended Complaint, there will be no Third.  Any future successful motion to dismiss shall be granted without leave to amend.

IT IS SO ORDERED.